# COURT OF APPEALS OF VIRGINIA

### Record No. 1632-25-3

RANDALL KEITH CARTER

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Causey, Raphael and Duffan

Opinion Issued July 28, 2026[*]

**FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY**
Brian H. Turpin, Judge

(Jason S. Eisner, on brief), for appellant.

(Jay Jones, Attorney General; Sandra M. Workman, Senior Assistant Attorney General, on brief), for appellee.

**MEMORANDUM OPINION BY**
**JUDGE KEVIN M. DUFFAN**

Randall Keith Carter appeals the Pittsylvania County Circuit Court's conviction of object sexual penetration, in violation of Code § 18.2-67.2. The circuit court sentenced Carter to 20 years' incarceration, with 10 years suspended. The issue on appeal is whether the evidence is sufficient to prove the elements of (1) forcible contact and (2) penetration. For the following reasons, we affirm.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

BACKGROUND

"We recite the facts in the light most favorable to the Commonwealth, the prevailing party below." *Johnson v. Commonwealth*, 85 Va. App. 257, 266 (2025) (quoting *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Id.*

B.H.[2] was cleaning her house when Carter knocked on her door.[3] B.H. knew Carter because he was a client at the HVAC company she worked for. She let him in because Carter had stopped by her house "two or three times" before and B.H.'s boss was out of the country. She thought he was there to give her an update on work her employer was doing for him. During Carter's visit, B.H. called her boss to discuss the work, and then her fiancé to discuss the same.

When B.H. ended the call, Carter was "very excited" and asked for a hug. B.H. thought that Carter was happy because he was getting all his requested work done, so she gave him a "half hug" in return. At that point, "that's when [Carter] grabbed [B.H.] and stuck his hand down [her] pants." Carter "grabbed [her] with one arm, which held one of [her] arms down. [She] couldn't move it, and with his other arm he stuck it in [her] pants, and inserted his fingers inside of [her]." B.H. confirmed that Carter inserted his fingers inside of her vagina. B.H. "was using [her] free arm to try to pry his hand out[,]" but she was "terrified[,]" and "[her] body kind of went numb[.]" When B.H. could not "break free" and remembered that "luckily [her]

_____

[2] We refer to the victim by her initials to protect her privacy.

[3] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [the appellant]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022). "The rest remains sealed." *Id.*

windows were open, [so] [she] started screaming." She told Carter that "someone's going to hear me[,]" and so he "let go and left." B.H. "[l]ocked the door, . . . called [her] fiancé" again, and then contacted the police.

B.H.'s fiancé confirmed that she called him while Carter was at her house and again after Carter left. B.H.'s fiancé testified that during the second phone call, B.H. was "in tears" and said that Carter attacked her and tried to rape her.

Pittsylvania County Sheriff, Deputy Dakota Wilson, responded to B.H.'s call. Deputy Wilson testified that B.H. told him that Carter asked her to do a job, that everything seemed normal, and that Carter wanted a hug from her. When she hugged Carter, he restrained her with one arm, kissed her on the neck, and put his hand down her pants. Deputy Wilson asked if there was any penetration, and B.H. told him that there was. Deputy Wilson asked B.H. to demonstrate with her own hands, and she confirmed that the penetration went to her middle knuckle.

Deputy Wilson then went to Carter's residence to question him about the incident. After Carter admitted that he hugged B.H., kissed her neck, and put his hand down her pants, Deputy Wilson arrested him. Their conversation was recorded on Deputy Wilson's body-worn camera and played for the circuit court at trial. When the magistrate asked Carter if he understood the charge against him, Carter responded that "whatever [it was], he was guilty."

After the Commonwealth rested, Carter moved to strike, challenging the sufficiency of the Commonwealth's evidence. The circuit court denied Carter's motion.

Carter then elected to testify during his trial. Carter testified that he went to B.H.'s house to discuss the work her company was doing at his trailer. He stated that he knew B.H.'s fiancé and knew that they were in a relationship. He agreed that he got excited about the prospect of the work getting done and so kissed B.H. on the neck. He testified, however, that the "next thing

[he] knew" was that they were kissing; he elaborated that he "kissed her and she kissed [him] back." He said she started telling him that her fiancé was gone all week, would not be home, and that he was only home on the weekends. Carter also testified that B.H. pulled up her shirt so he could see her breasts and that he kissed them. He testified that when she pulled her shirt down, she rubbed Carter's "[p]rivate parts" with her hand. In response, Carter "rubbed and touched" B.H. Carter insisted that B.H. did not "holler or nothing" and that he left because he had "so much" to do at the trailer.

When asked why he did not tell Deputy Wilson that the encounter was consensual, Carter responded that it was because he was "shocked" and "surprised" when the deputy arrived. He also testified that he did not tell the magistrate—or anyone else—that the encounter was consensual.

In rebuttal, B.H. denied that she kissed Carter, pulled up her shirt, rubbed his genitals, or in any way "reciprocate[d] the affection beyond the side hug" she gave him.

Carter renewed his motion to strike and again argued in closing that "[t]here is a certain conflict obviously between the two individuals here, and it does come down to consent." Carter suggested that there was reasonable doubt as to whether "any sort of contact between the two of them was in fact non-consensual in nature," especially because B.H. only stated that there was penetration after "prodding" by Deputy Wilson.

The circuit court denied Carter's motion to strike and stated that "[q]uite frankly, [it] wholly believe[d] the testimony of [B.H.], and [it] wholly disbelieve[d] the explanation and testimony of [Carter]." Consequently, the circuit court convicted Carter of object sexual penetration. It sentenced him to 20 years' incarceration, with 10 years suspended. Carter appeals.

- 4 -

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

An accused is guilty of object sexual penetration "if he . . . penetrates the labia majora . . . of a complaining witness, . . . other than for a bona fide medical purpose, . . . against the will of the complaining witness, by force, threat or intimidation." Code § 18.2-67.2(A)(2). Penetration with a finger is sufficient to convict a defendant of object sexual penetration. *Bell v. Commonwealth*, 22 Va. App. 93, 98-99 (1996).

B.H. testified that Carter visited her house, unannounced and uninvited, purportedly to discuss work he wanted done at his trailer. She further testified that she only shared a professional relationship with him and that Carter knew she was engaged. B.H. testified that Carter initiated contact by giving her a hug and that she only gave him a "half hug" in response. It was at that point that Carter grabbed her arm to hold her down, put his hand down her pants, and digitally penetrated her vagina without her permission and against her will. B.H. further testified that she immediately screamed, that she was shocked, scared, and numb during the assault, and that she promptly called her fiancé to relay what happened. B.H.'s fiancé later confirmed that B.H. was tearful and upset

during the second call. Immediately after that, B.H. called the police.[4] B.H.'s testimony alone sufficiently established all the elements of the offense, specifically the elements of penetration and lack of consent. Accordingly, the circuit court's finding that Carter committed object sexual penetration on B.H. is not plainly wrong or without evidence to support it.

Moreover, Carter contends that the evidence of whether penetration occurred "was in unresolvable conflict." He also maintains that "whether consent was given is in diametric dispute." These arguments are unpersuasive. To the extent Carter presents conflicting evidence, the circuit court is in the best position to judge the credibility of the witnesses. Indeed, "[i]n its role of judging witness credibility, the fact finder is entitled to *disbelieve the self-serving testimony of the accused* and to conclude that the accused is lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998) (emphasis added). This is because "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)).

Here, the circuit court believed B.H. and disbelieved Carter. In addition to B.H.'s testimony, the evidence showed that within 45 minutes of the report of the sexual assault, Deputy Wilson went to Carter's residence to speak with him. During their interaction, Carter admitted that he kissed B.H. and put his hand down her pants, and did not claim that the encounter was consensual. Carter also omitted further details which he later revealed on the stand: that B.H.

---

[4] Although no corroboration was needed for the conviction, we note that "[a] complaint made by a victim of sexual assault 'has long been considered an expected and natural expression of the victim's feelings in response to the offense.'" *Wilson v. Commonwealth*, 46 Va. App. 73, 83 (2005) (quoting *Lindsey v. Commonwealth*, 22 Va. App. 11, 14 (1996)). "Such a complaint 'is a relevant circumstance in determining the complainant's credibility, on the theory that the failure to bring a complaint raises suspicion and doubt about the trust of the report.'" *Id.* (quoting *Lindsey*, 22 Va. App. at 14). Thus, the circuit court could have considered the fact that B.H. immediately reported the incident to both her fiancé and the police in rendering its verdict.

exposed her breasts to him, that she suggested that her fiancé was not coming home until the weekend, that she kissed him, and that she rubbed his "[p]rivate parts." In addition, when the magistrate asked if he understood the charge against him, Carter stated that whatever it was, he was guilty. Only at trial did Carter suggest that the incident was consensual. And although he explained that he failed to mention B.H.'s consent to Deputy Wilson because he was shocked that she had called the police, it was solely for the circuit court, sitting as fact finder, to weigh Carter's initial responses and his explanation for those responses, against the testimony he gave at trial.

Last, Carter argues that "[n]o forensic evidence or independent evidence was ever introduced to substantiate [B.H.'s] version of the story in which consent was absent." Importantly, it is well-settled that "[a] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Cardenas Flores v. Commonwealth*, 84 Va. App. 495, 517 (2025) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). "Because sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Id.* (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 191 (1989)). "Thus, it is clear that the victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction." *Id.* (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)).

In any case, "[w]e cannot disturb the trial court's credibility determination unless [the witness's] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Abouemara v. Commonwealth*, 77 Va. App. 719, 731 (2023) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). "Witness testimony will not be found inherently incredible 'unless it is "so manifestly false that reasonable men ought not to believe it" or "shown to be false by objects or things as to the existence and meaning of which reasonable men should not

differ."'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239-40 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018)). Here, the circuit court rejected Carter's denials and believed B.H. As there was nothing inherently incredible about B.H.'s testimony, we must leave the circuit court's finding undisturbed.

In sum, B.H.'s testimony, which was accepted as true by the finder of fact at trial, established that Carter penetrated her vagina against her will "by force, threat or intimidation" in violation of Code § 18.2-67.2. We do not question the veracity of B.H.'s testimony or revisit the circuit court's rejection of Carter's testimony, as it was the fact finder's "*sole* responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (emphasis added) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Instead, we find that a reasonable fact finder could conclude beyond a reasonable doubt that Carter committed object sexual penetration. And so, the circuit court's judgment was not plainly wrong or without evidence to support it. Consequently, we affirm the verdict.

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*